```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
    MICHAEL SASSE,
                                              1:18-cv-02964-NLH
                      Plaintiff,
                                              OPINION
    v.

    COMMISSIONER OF SOCIAL
    SECURITY,
                      Defendant.
```

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S. WHITE HORSE PIKE
AUDUBON, NJ 08106

  *On behalf of Plaintiff*

KRISTINA CAROL EVANS COLE
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

  *On behalf of Defendant*

**HILLMAN**, District Judge

     This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[1] under Title II of the Social Security

---

[1] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of

Act. 42 U.S.C. § 423, et seq. The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, June 1, 2011, through the date he was last insured (December 31, 2013). For the reasons stated below, this Court will affirm that decision.

I.     BACKGROUND AND PROCEDURAL HISTORY

On November 20, 2014, Plaintiff, Michael Sasse, protectively filed an application for DIB,[2] alleging that he became disabled on June 1, 2011. Plaintiff claims that he can no longer work as a driver, maintenance worker, fence builder, and material handler/forklift operator because of his degenerative disc disease and seizure disorder.

Plaintiff's initial claim was denied on February 25, 2015 and upon reconsideration on May 20, 2015. Plaintiff requested a hearing before an ALJ, which was held on August 4, 2017. On

---

quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months. 42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits. That date may be earlier than the date of the formal application and may provide additional benefits to the claimant. See SSA Handbook 1507; SSR 72-8.

September 11, 2017, the ALJ issued an unfavorable decision. Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on February 2, 2018, making the ALJ's September 11, 2017 decision final. Plaintiff brings this civil action for review of the Commissioner's decision.

**II. DISCUSSION**

 **A. Standard of Review**

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

3

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative

> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to
> determine whether the conclusions reached
> are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B. Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[3] for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the

---

[3] The regulations were amended for various provisions effective March 27, 2017. See 82 F.R. 5844. The parties do not indicate that any of the amendments are applicable to the issues presented by Plaintiff's appeal.

6

claimant will be found "disabled."

4. If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C. Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Plaintiff's impairments of degenerative disc disease and seizure disorder were severe. At step three, the ALJ determined that Plaintiff's severe impairments or his severe impairments in combination with his other impairments did not equal the severity of one of the listed impairments for 1.04 – disorders of the spine, or listing 11.02 – epilepsy. The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions. After considering a vocational expert's testimony, the ALJ concluded that Plaintiff's RFC permitted him to work as a storage facility rental clerk, inspector, and information clerk (steps four and five).

Plaintiff argues the ALJ violated his due process rights by denying an application to submit a post-hearing brief and consider arguments regarding discrepancies in the vocational expert's testimony. Plaintiff also argues that the ALJ erred by not explaining his conclusion that Plaintiff's impairments did not meet any of the listings at step three. Plaintiff further argues that the ALJ's RFC assessment was not supported by substantial evidence. Plaintiff finally argues that the ALJ erred by relying upon the unsupported RFC assessment to conclude Plaintiff was capable of performing certain jobs, and in

8

particular the information clerk job, the numbers of which are not properly supported by the VE. The Court finds Plaintiff's arguments are without merit.

### 1. Whether ALJ erred by not permitting Plaintiff's counsel to submit a post-hearing brief regarding discrepancies with the vocational expert's testimony in violation of his due process rights

Plaintiff contends that the ALJ violated his due process rights[4] by failing to consider a supplemental brief after the hearing regarding the vocational expert's job numbers. The brief essentially challenges the entire methodology that vocational experts use to quantify the number of jobs in the national economy (R. at 48-53), which is an issue currently pending before the United States Supreme Court, see Biestek v. Comm'r of Soc. Sec., 880 F.3d 778, 789 (6th Cir. 2017), cert. granted, 138 S. Ct. 2677 (June 25, 2018)).

In his decision, the ALJ recognized Plaintiff's attempt to assert the same challenge. He thoroughly explained why he would

---

[4] Social Security administrative hearings are subject to the requirements of due process, Lippincott v. Commissioner of Social Sec., 982 F. Supp. 2d 358, 385 (D.N.J. 2013) (citing Richardson v. Perales, 402 U.S. 389, 401–02 (1971)) (other citation omitted), and any hearing afforded a Social Security disability claimant must be full and fair, Meyler v. Commissioner of Social Sec., 238 F. App'x 884, 889 (3d Cir. 2007) (citing Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995)). A claimant must show some prejudice, however, to establish that his due process rights were violated. See, e.g., Mayes v. Social Sec. Admin., 190 F. App'x 183, 186 (3d Cir. 2006) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

9

not consider it, and how, even if he did, it would not change the ultimate conclusion that Plaintiff could perform jobs that existed in significant numbers in the national economy. The ALJ stated:

> The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (See generally 20 CFR 404.935(a))[.]
>
> The representatives asked to submit additional vocational evidence after the hearing (21E). I denied this request for reasons that were partially explained during the hearing, and that are also explained under the penultimate numbered finding below. Additionally, to the extent that the representatives asked to submit general evidence about issues known prior to the hearing that were not identified five days in advance, that part of the request was also denied because of the above-referenced five-day rule (See generally 20 CFR 404.935(a) and 404.935(b)).
>
> . . .
>
> The vocational expert testified [that a person with Plaintiff's RFC can] perform the requirements of representative occupations such as:
>
> • Storage Facility Rental Clerk. [Dictionary of Occupational Titles ("DOT")] #295.367-026. Light, SVP 2. 87,000 jobs.
> • Inspector. DOT #727.687-062. Light, SVP 2. 43,000 jobs.
> • Information Clerk. DOT #237.367-018. Light, SVP 2. 150,000 jobs.
>
> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is generally consistent with the information contained in the DOT. The caveat here is the RFC's stand/walk limitations. That part of the RFC falls between sedentary and light exertion. The DOT does not contemplate that particular fraction of standing and/or walking. This does not necessarily mean that the DOT and the vocational expert's testimony are inconsistent.

However, there is not a perfect overlap and there is a burden of proof shift.

To the extent that this creates an ambiguity, I relied on the expert's testimony. The vocational expert explained that these example job-types could still be performed despite the factors and limitations found above. This expert is an independent vocational authority in her own right, she has extensive professional experience about vocational issues, and she indicated that these jobs could still be performed (See generally SSR 00-4p; l 7E; Hearing Testimony).

Finally, with [] regards to the denial of the above referenced request for post-hearing vocational development, this was also based on factors related to this finding. In particular, the vocational evidence outlined above already provides sufficient evidence to support the step five finding in this case.

Other factors also support denying that request. These include mootness. For example, Medical-Vocational Rule 201.21 shows that even if the claimant's RFC were reduced all the way down to sedentary, he would still be "not disabled". (Acquiescence Ruling 01-1(3) is inapplicable; Rule 201.21 is simply being used as supplemental support for an ancillary issue). Additionally, SSRs 96-8p and 96-9p show that the nonexertional and additional exertional limitations in this RFC would still leave the light and sedentary occupational bases largely intact. Furthermore, as discussed in 20 CFR 404.1566, the Social Security Administration takes administrative notice of reliable job information from publications including the DOT and companion sources. Notice is also taken of the narrow scope of the "cross-examination" of the expert. In particular, the representative said that he had no objections to the expert's qualifications or testifying.

Based on the testimony of the vocational expert, I conclude that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.

(R. at 31, 40-41.)

Plaintiff argues that the ALJ violated his due process rights by not considering his post-hearing brief, but Plaintiff does not point to anything in the supplemental brief that would contradict the ALJ's reasoning. Even if the ALJ should have accepted the supplemental brief into evidence, Plaintiff fails to show that the Storage Facility Rental Clerk, Inspector, and Information Clerk jobs do not exist in significant numbers in the national economy. Plaintiff also fails to show that he was not capable of performing any other light level jobs and any sedentary level jobs.[5] In short, Plaintiff does not explain how the arguments contained in the supplemental brief would have changed the outcome of the ALJ's decision. Without articulating how he has suffered some prejudice, the Court cannot find that the ALJ violated Plaintiff's due process rights.

2. **Whether the ALJ erred by not explaining his conclusion that Plaintiff's impairments did not meet any of the listings at step three**

Plaintiff argues that the ALJ erred at step three by finding that his impairments did not meet listing 1.04 – disorders of the spine.[6] Plaintiff argues that the ALJ focused

---

[5] 20 C.F.R. § § 404.1567(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

[6] It does not appear that Plaintiff challenges the ALJ's finding as to listing 11.02 – epilepsy. Even if he did, the Court finds that the ALJ did not commit error for the same reasons the ALJ

12

on limitations to the lumbar spine, instead of the cervical spine, which is actually Plaintiff's impairment. Plaintiff further argues that the medical evidence demonstrates significant cervical limitations, which ultimately concluded with a cervical spinal fusion in 2017. Plaintiff contends that the ALJ's determination at step three is without any meaningful analysis, and therefore must be overturned.

As a general principle, an ALJ is required to set forth the reasons for his decision, and a bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment is insufficient. <u>Burnett v. Commissioner of Social Security Administration</u>, 220 F.3d 112, 119-20 (3d Cir. 2000). An ALJ is not required, however, "to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." <u>Jones v. Barnhart</u>, 364 F.3d 501, 504-05 (3d Cir. 2004). An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that" a claimant does not meet the requirements for any listing. <u>Id.</u>

---

properly considered whether Plaintiff met listing 1.04.

To meet listing 1.04, Plaintiff must have:

> A disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

In order for an impairment to match a listing, a claimant must show that the impairment meets "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" Jones, 364 F.3d at 504 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in original)). The burden is on Plaintiff to demonstrate that his impairments meet the listings. Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005)

(explaining that in "the first four steps the burden is on the claimant"); id. ("If the claimant satisfies step 3, she is considered per se disabled.").

In this case, Plaintiff provides no reasoning as to how he meets any of the criteria for listing 1.04 during the relevant time period, which is as of December 31, 2013. Although Plaintiff reports that he has various cervical spine impairments and underwent a cervical spine fusion in 2017, Plaintiff does not explain how he met the elements of listing 1.04 four years earlier.[7]

Moreover, the ALJ's detailed substantive analysis of Plaintiff's impairments in the context of Plaintiff's RFC[8] shows that the ALJ properly supported his conclusion regarding the extent of Plaintiff's impairments. (R. at 35-39.) Plaintiff's lack of explanation as to how he meets listing 1.04, along with the ALJ's thorough recitation of the record evidence, both demonstrate that the ALJ did not err at step three.

### 3. Whether the ALJ erred in Plaintiff's RFC assessment

The ALJ found that Plaintiff had the RFC to perform light

---

[7] Even if the Court could consider a procedure performed some four years after the date by which Plaintiff must establish his disability, there is no indication that having a cervical spine fusion meets the listing 1.04.

[8] The RFC reflects "what [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a).

work as defined in 20 C.F.R. 404.1567(b)[9] with the following restrictions: "Stand and walk for 4 hours out of an 8-hour workday; Avoid all exposure to moving machinery and unprotected heights; Never climb ladders, ropes, or scaffolds; and No more than occasional postural maneuvers otherwise *(viz.,* climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling)." (R. at 35.)

Plaintiff's sole challenge to the ALJ's RFC assessment is that the ALJ neglected to explain the effects of his pain, and the fact that he lives in fear of the next seizure. Contrary to Plaintiff's argument, the ALJ thoroughly recited Plaintiff's complaints of pain and reports of how his seizure disorder affected his life. The ALJ observed that Plaintiff received conservative treatment for his seizure disorder and spine impairment (R. at 36, 37), and the ALJ adjusted the RFC for light work according to Plaintiff's physical limitations (R. at 38).

The ALJ also modified the RFC based on Plaintiff's subjective complaints. (Id. at 38.) The ALJ noted that

---

[9] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job falls within this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

Plaintiff's statements were highly inconsistent in his testimony and statements to his doctors. (Id.) The ALJ noted that Plaintiff tried to explain this inconsistency by contending that his doctors ignored and omitted his complaints in their records. (Id.) The ALJ also noted that Plaintiff's work history did not support Plaintiff's claims regarding the totally disabling nature of his seizure disorder during the relevant time period. (Id.)

The ALJ's assessment of Plaintiff's subjective complaints is entitled to great deference.[10] Zirnsak v. Colvin, 777 F.3d

---

[10] Effective March 26, 2016, the SSA issued Social Security Ruling 16-3p, which superseded SSR 96-7p, to eliminate the use of the term "credibility." SSR 16-3p explains, "We solicited a study and recommendations from the Administrative Conference of the United States (ACUS) on the topic of symptom evaluation. Based on ACUS's recommendations and our adjudicative experience, we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation. . . . In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." SSR 16-3p. This Court employs the term "credibility" here in the context of whether Plaintiff's statements are supported by other record evidence, rather than with regard to Plaintiff's overall character or truthfulness, which the Court has no reason whatsoever to question. See, e.g., Levyash v. Colvin, 2018 WL 1559769, at *8 (D.N.J. 2018) (explaining that SSR 16–3P announced a policy against evaluating claimant's truthfulness in determining whether individuals are disabled, but even though SSR 16–3p clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other

17

607, 612 (3d Cir. 2014) ("[T]his Court defers to the ALJ's assessment of credibility."); Metz v. Federal Mine Safety and Health Review Com'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference."); 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). The Court recognizes Plaintiff's general disagreement with how the ALJ viewed his subjective complaints, but Plaintiff does not point out how the ALJ was mistaken in his assessment. The Court finds that the ALJ's RFC determination, based on the medical evidence and Plaintiff's testimony, was properly supported and satisfies the substantial evidence standard.

> **4. Whether the ALJ erred in finding that Plaintiff's RFC rendered him capable of performing other work**

Plaintiff argues that because the ALJ erred in his RFC analysis, the finding that Plaintiff was capable of performing other work in the national economy based on that RFC is erroneous. Plaintiff's argument is unavailing because the ALJ's RFC determination was proper.

---

record evidence remains the same).

Plaintiff also argues, in line with his due process argument, that the numbers of information clerk jobs provided by the vocational expert are suspect, and the vocational expert's overall testimony is based on improper methodologies for determining job numbers. The Court rejects Plaintiff's argument for the same reasons explained above with regard to Plaintiff's due process argument.[11]

### III. Conclusion

For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of June 1, 2011 is supported by substantial evidence. The decision of the ALJ is therefore affirmed. An accompanying Order will be issued.

Date: March 18, 2019            s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.

---

[11] At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy. Plaintiff specifically challenges only the numbers for the information clerk position and not the other two jobs suggested by the vocational expert. See Reed v. Commissioner of Social Security, 2018 WL 5617549, at *6 (D.N.J. 2018) (citing Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (citing 20 C.F.R. § 416.966(b))(explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)).